March 19, 1990

113

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| JOSE C. TENORIO, et al., | ) | ORIGINAL ACTION NO. 89-002 |
| Petitioners, | ) | |
| vs. | ) | |
| SUPERIOR COURT OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, | ) | DECISION and ORDER |
| Respondent, | ) | |
| and | ) | |
| L & W Corporation; et al., | ) | |
| Real Parties In Interest, | ) | |
| and | ) | |
| The Board of Elections of the Commonwealth of the Northern Mariana Islands, et al., | ) | |
| Real Parties In Interest. | ) | |

BEFORE: Dela Cruz, Chief Justice; Villagomez and Borja, Associate Justices.

DELA CRUZ, Chief Justice:

We are asked to rule upon two separate motions for sanctions brought by two attorneys representing the opposing

114

parties in a writ of mandamus proceeding.[1]

Pursuant to R.App.Pro. 38(b), the petitioners have moved for sanctions against the respondent real parties in interest (L & W Corporation, et al, hereafter "respondents") and their attorney, Mr. Robert O'Connor (hereafter "O'Connor"). The respondents have, in turn, filed a cross-motion for sanctions against the petitioners and their attorney, Mr. Theodore Mitchell (hereafter "Mitchell"). Mitchell and O'Connor each accuse the other of sanctionable misconduct relating to the writ of mandamus proceeding and events subsequent thereto.

It is necessary to review the mandamus proceeding in order to evaluate the merits of each motion.

I.

In the original action filed in Superior Court, the respondents had challenged the Attorney General's certification of a popular initiative petition to ban most forms of gambling in the Commonwealth. Their challenge was based on several grounds, including a contention that the Board of Election regulations that the Attorney General applied in certifying the popular initiative violated the Commonwealth Constitution. Another ground was predicated on assertions of fraud and other

---

[1] We granted the writ on November 2, 1989. An opinion setting forth our reasons for granting the writ was handed down in <u>Tenorio, et al. v. Superior Court, et al.</u>, Original Action No. 89-002 (N.M.I. November 14, 1989).

improper conduct by initiative proponents during the signature-gathering drive.

On October 17, 1989, the Superior Court entered an order denying a motion to dismiss for lack of subject matter jurisdiction.[2/] Two days later, the court ruled that NMI Constitution, Article XVIII, § 4(a) required the popular initiative petition to contain a certain minimum number of valid signatures as of the date that the petition was resubmitted for certification. The government conceded that if that date was used as the basis for certification, then the petition as submitted did not contain the constitutional minimum. Accordingly, the court issued an injunction preventing the submission of the initiative to the electorate in the November 4, 1989, election.[3/] The Superior Court thus did not make any findings as to most of the respondents' factual assertions.

Following the issuance of the injunction, the petitioners filed a motion in Superior Court to intervene. On October 27, the Superior Court granted the petitioner's motion. On the same day, the petitioners filed a petition for a writ of mandamus (hereafter "petition") with this Court. The petition requested a writ directing the Superior Court to vacate its

---

[2/] L & W Corporation v. Board of Elections, Civil Action No. 89-957 (NMI Superior Court, Oct. 17, 1989).

[3/] L & W Corporation v. Board of Elections, Civil Action No. 89-957 (NMI Superior Court, Oct. 19, 1989).

injunction, dismiss the respondents' complaint with prejudice for lack of subject matter jurisdiction, and to retain jurisdiction over the parties and their attorneys for the purpose of ruling upon any motions for sanctions.

The petitioners argued that the Superior Court lacked jurisdiction to entertain the complaint because it was filed after the 30-day limit for challenges to agency actions under the Administrative Procedure Act (hereafter "APA"). See 1 CMC § 9112(b).

The respondents answered the petition on October 31 with a brief in opposition (hereafter "opposition brief"). The opposition brief opened with a statement of the case reciting many of the assertions of fraud and improper conduct on the part of the initiative proponents that were originally raised in the Superior Court proceeding. The respondents argued, inter alia, that the Superior Court rulings should not be set aside because they properly held that the action was not barred by the APA's 30-day limit and that the regulations violated the Constitution.

Following a hearing, we granted a writ of mandamus on November 2, 1989. The writ directed the Superior Court to vacate its order enjoining the Board of Elections from submitting the anti-gambling initiative to the electorate in the November 4 election. We declined to rule upon the other relief requested in the petition.

On November 4, election day, the petitioners filed a "Second Supplemental Petition for Writ of Mandamus" (hereafter

117

"second petition"). In the second petition, the petitioners requested that we consider setting aside the results of the election "[i]f the [initiative] fails by a very close margin". Second petition at 7. The basis for this conditional request was certain out-of-court statements made by O'Connor to the news media that the petitioners believed were so prejudicial to the passage of the initiative that they "may turn out to be the sole cause of failure at the polls". Second petition at 2. The petitioners cited Sheppard v. Maxwell, 384 U. S. 333 (1966), apparently for the proposition that adverse publicity could warrant setting aside the result of the election. Second petition at 7.

The popular initiative was defeated in the November 4 general election.

On November 6, the respondents voluntarily dismissed their original action in Superior Court and also filed with this Court a short reply to the petitioners' second petition. The reply ("Remarks Regarding Second Supplemental Petition for Writ of Mandamus; Exhibits" -- hereafter "reply brief") noted that the original action had been dismissed and requested dismissal of the second petition as a frivolous and improper "campaign ploy". Reply brief at 3. The respondents also requested the Court to consider imposing sanctions against Mitchell.

## II.

On November 8, the petitioners filed a motion for sanctions against the respondents and O'Connor, specifying four

grounds arising from O'Connor's opposition brief and reply brief: (1) factual misrepresentations; (2) irrelevant allegations; (3) legally implausible arguments; and (4) use of the legal process for an improper purpose.

The first ground is based upon the assertions of fraud and other improper conduct on the part of the initiative proponents that were set forth in the opposition brief. The petitioners contend that the assertions were stated as established facts, and constituted misrepresentations to this Court because they were never established to be facts by the Superior Court after an evidentiary hearing.

Second, the petitioners contend that these statements were irrelevant because they did not relate to the argument in the petition that the respondents' challenge was barred by the 30-day APA time limit.

The third ground for sanctions, the asserted implausibility of the legal arguments in the opposition brief, is chiefly based on the claim that no valid argument was advanced to counter the argument that the certification challenge was barred by the 30-day time limit.[4]

Finally, the petitioners claim that O'Connor misused the legal process to harass them. Statements in the opposition

_____

[4] Mitchell also claims that other legal arguments advanced in O'Connor's opposition brief were frivolous, including a contention that the Attorney General lacked jurisdiction to certify a petition that did not contain adequate valid signatures and a contention that the 30-day time limit was extended by an official reconsideration of the certification.

119

brief and in the reply brief are cited: "[p]etitioner is not seeking justice, petitioner is seeking to fool this court" and "childish and frivolous". Opposition brief at 48, reply brief at 2.

The petitioners ask for imposition of a fine after a hearing, for a separate monetary sanction payable by respondents' counsel to deter future misconduct, a reprimand, and an award of costs and attorney's fees.

### III.

On November 24, the respondents filed a cross-motion for sanctions against the petitioners and Mitchell. The respondents specify four grounds: (1) improper out-of-court conduct by Mitchell; (2) use of the legal process for an improper purpose; (3) raising of legally implausible arguments; and (4) factual misrepresentations.

The respondents allege out-of-court incidents in which Mitchell addressed O'Connor and a representative of one of the respondents in obscene and abusive language, and offered to physically fight the latter. The respondents do not suggest that such conduct violated R.App.Proc. 38(b). Instead, they invoke this Court's inherent authority to impose sanctions when an attorney conducts himself in a manner unbecoming to a member of the bar.

The second ground for sanctions is based on the allegation that Mitchell told O'Connor that his only reason for intervening in the case was to seek sanctions against O'Connor.

120

The respondents contend that Mitchell was thus using the legal process for the improper purpose of harassing O'Connor.

The third ground, advancement of legally implausible arguments, is based on two claims. The respondents contend that the petitioners' second petition ("Second Supplemental Petition for Writ of Mandamus") was so legally implausible that it was frivolous and that the petitioners should be sanctioned. They also contend that the petitioners' motion for sanctions is in itself sanctionable because it frivolously claims that O'Connor's opposition brief arguments were legally implausible. The respondents note that the Superior Court had ruled in their favor by granting the injunctive relief they sought.

Finally, the respondents claim that Mitchell misrepresented the facts in his motion for sanctions against O'Connor. They contend that the factual assertions in the opposition brief which the petitioners complain of were supported by exhibits and affidavits filed with the Superior Court and were part of the record considered by that court and, later, by this Court in the mandamus proceeding. They argue that neither court concluded that the statements were incorrect or unsubstantiated.

The respondents ask us to award attorneys' fees and costs against the petitioners and Mitchell.

## IV.

The basis for most of the sanctions claims, R. App. Proc. 38(b), provides, in pertinent part:

121

The signature of an attorney or party [on a brief, motion or any other pleading] constitutes a certification by the signer that the signer has read the brief, motion or any other pleading; that to the best of the signer's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law (or a good faith argument for the amendment or repeal of existing law can be made) and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a brief, motion, or any other pleading is signed in violation of this rule, the Court, upon motion or upon its own initiative, shall impose upon the signer, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the brief, motion, or any other pleading, including a reasonable attorney's fee.

This language is patterned after Federal Rule of Civil Procedure 11, which applies to trial practice.[5]

█Case law construing Fed.R.Civ.P. 11 is cited by both parties to aid the Court in construing R.App.Proc. 38(b). We find this appropriate. "[I]n interpreting local rules [of appellate procedure], this Court looks to the federal appellate rules for guidance in discerning what the purpose is behind a particular rule". South Seas Corporation v. Sablan, 1 CR 122 (D.NMI App. Div., 1981).

█Sanctions may be imposed under Fed.R.Civ.P. 11 if a document is not well grounded in fact. An objective reason-

---

[5] Neither party relies on R.App.Proc. 38(a), which is patterned after Federal Rule of Appellate Procedure 38. Sanctions are imposed under this rule for many of the reasons that sanctions are imposed under Fed.R.Civ.P. 11. See, e.g. Casper v. Commissioner of Internal Revenue, 805 F.2d 902, 907 (10th Cir. 1986).

ableness test is used to determine whether an adequate prefiling inquiry has occurred. Eastway Construction Corp. v. City of New York, 762 F.2d 243 (2d Cir. 1985). The circumstances of each case are considered, including the time available for prefiling inquiry and the source and complexity of available prefiling information. Brown v. Federation of State Medical Boards of the United States, 830 F.2d 1429, 1435 (7th Cir. 1987). Furthermore, a document is not well grounded in fact if an attorney has misrepresented the evidence. In re Disciplinary Action of Curl, 803 F.2d 1004 (9th Cir. 1986).

Sanctions may also be imposed under Fed.R.Civ.P. 11 if a document is not well grounded in law. A position is warranted by existing law if it is supported by a non-frivolous legal argument. A legal argument is non-frivolous if it is likely to succeed on the merits or if reasonable persons could differ as to the likelihood of its success on the merits. See American Bar Association Section of Litigation, Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure, 121 F.R.D. 101, 119 (June 1988) (hereinafter "ABA Standards"). A good faith argument for a change of existing law may also be advanced. An objective reasonableness test includes analysis of whether the document candidly acknowledges the current adverse law and argues for a change in existing law. Id., at 120, 121.

Finally, sanctions may be imposed under Fed.R.Civ.P. 11 if a document is interposed for an improper purpose. Even a document well grounded in fact and law can violate this rule

123

if there is evidence of the signer's bad faith. See Chevron U.S.A., Inc. v. Hand, 763 F.2d 1184 (10th Cir. 1985). Whether a signer acted with an improper purpose is judged under an objective standard. Brown, 830 F.2d at 1436.

### V.

In analyzing the petitioners' motion for sanctions, we find that most of the grounds asserted do not warrant the imposition of sanctions. We are persuaded, however, that O'Connor crossed the line of permissible advocacy in his recitation of the facts in the opposition brief to the petition for mandamus.

The petitioners' first contention is based on the premise that a document is not well grounded in fact if an attorney has misrepresented the evidence. In re Curl, 803 F.2d at 1006.

We note that the Superior Court orders never addressed the factual assertions of fraud and other improper conduct set forth in the opposition brief. Despite this fact, the opposition brief presented the assertions in a conclusionary manner, giving the impression that the assertions were established facts or were uncontested. An example: "This petition was over 1,000 signatures short." Another example: "The petition circulators purposely lied about the content of the petition ...." A third example: "There are no less than 78 forged signatures on this petition ...."

Many of these assertions were still contested by the petitioners when they filed their petition with this Court.

124

Respondents nevertheless represented the assertions as facts, when it is quite clear that they were merely allegations.

This manner of presenting factual allegations is unacceptable and sanctionable because it is misleading. In re Curl, supra. Ordinarily, a party's factual presentation in the initial pleadings in a writ should be liberally construed as allegations subject to a factual finding by the trier of fact. Here, the respondents misleadingly presented their allegations as if they were established facts. Nowhere in the statement of the case could we find any qualification that the facts as presented were simply allegations.[6/] We find that an attorney has a duty to present a client's position in a manner that does not suggest that allegations are established facts. O'Connor was overzealous in his advocacy, and crossed the line of permissible pleading.

It may well be that, had there been a hearing on the disputed facts before the Superior Court, the respondents might have proven the allegations to be true and thus factually conclusive. However, there was no evidentiary hearing below. The assertions were never found to be facts, and their presentation to this Court as established facts was misleading and sanctionable. In re Curl, supra.

With respect to the petitioners' second contention, we decline to find that the statements were irrelevant. In order

---

[6/] The fact that we treated the assertions as allegations in the mandamus proceeding does not excuse the respondents and O'Connor from compliance with standards of permissible advocacy.

125

to counter the petitioners' main argument, the respondents had to allege facts to show why the Superior Court asserted jurisdiction over the case and issued an injunction. The assertions of fact were relevant to the respondents' characterization of the case as a constitutional challenge, and not strictly an APA action that was barred by the 30-day time limit as the petitioners had contended.

We are also not persuaded by the petitioners' contention that the opposition brief was so legally implausible that it is sanctionable. Given our prior ruling that the Superior Court's assumption of jurisdiction was "not clearly erroneous",[7] we cannot find that the respondents' arguments were so "obviously and wholly without merit" that they were frivolous. ABA Standards, 121 F.R.D. at 119.

Finally, we are not persuaded by the petitioners' last contention: that the two statements cited from the opposition and reply briefs constituted harassment. Such statements do reflect the inability of the attorneys to professionally relate to each other.

"A lawyer should demonstrate respect for the legal system and for those who serve it, including ... other lawyers." Preamble, Model Rules of Professional Conduct, American Bar Association (1983).[8] Attorneys should be zealous advocates,

---

7/ Tenorio, et al v. Superior Court, et al, Original Action No. 89-002, slip op. at 9 (N.M.I. Nov. 14, 1989).

8/ The ABA's Model Rules are applicable in the CNMI pursuant to Rule 2, Disciplinary Rules and Procedures for Persons Practicing Law in the Courts of the Commonwealth (effective December 17, 1989).

126

but they should also refrain from making personal attacks upon each other. Where appropriate, we will not hesitate to impose sanctions on counsel in matters before us by applying R.App.Proc. 38 or by exercising our inherent authority.

## VI.

With respect to respondents' cross-motion for sanctions, most of the grounds asserted do not justify the imposition of a sanction. We do find, however, that petitioners' second supplemental petition had no basis, factually or legally, and is therefore sanctionable under R.App.Proc. 38(b). Further, the Court sua sponte finds that the cross-motion's allegations of out-of-court misconduct allegedly committed by petitioners' counsel were inappropriately raised and were irrelevant to these proceedings. We deem the raising of such allegations in this manner to be sanctionable.

First, as we just noted, we do have the inherent authority to impose sanctions that are not specifically addressed by rule. In re Villanueva, 1 CR 952 (D.NMI App. Div., 1984).

We decline to sanction the petitioners or Mitchell for the out-of-court matters complained of in this case for several reasons. First, the allegations should properly have been presented to the Disciplinary Committee of the Commonwealth of the Northern Marianas Bar Association for investigation.[9] The Disciplinary Committee, not this Court, should appropriately be

---

9/ The Court has been advised that this is now the case.

127

the initial forum for evaluating such charges. Second, the allegations were irrelevant to the case before us. Third, we believe that they were raised not as an appropriate response to the petitioners' motion for sanctions, but apparently to deflect from it in a distracting manner. We accordingly conclude that the raising of this claim of out-of-court misconduct was improper in purpose and sanctionable against O'Connor. Brown, 830 F.2d at 1436.

We also decline to sanction the petitioners based on the respondents' a egation of Mitchell's improper purpose in filing the motion to intervene. We are not satisfied that the petitioners filed their motion to intervene so that the respondents' counsel would be sanctioned. In light of what had transpired in this case, we find that petitioners' motion to intervene and to petition this Court were not filed to harass O'Connor.

As to the respondents' third contention, we find that it has merit. We agree that the petitioners' second petition was lacking in legal plausibility. We also sua sponte find that it was factually groundless. We, therefore, find that the filing of the second petition is sanctionable on these bases. The latter basis will be examined first.

Analysis of the second petition raises serious questions concerning the adequacy of the factual allegations to support a request for relief. "Claims based merely upon assumed potential invasions of rights are not enough to warrant judicial intervention." Ashwander v. Tennessee Valley

128

Authority, 297 U.S. 288, 324, 80 L.Ed. 688, 699 (1936). The relief requested in the second petition was conditioned on a hypothetical result of the election. Even if it did have a legal basis, it was factually speculative and premature. The document was thus not well grounded in fact, and is sanctionable on that basis.

The second petition was also not warranted by existing law. The petitioners' authority for setting aside the results of the election, Sheppard v. Maxwell, 384 U.S. 333 (1966), held that a criminal conviction could be set aside because of inflammatory, prejudicial trial publicity. Sheppard does not stand for the proposition that the results of an election may be set aside because of prejudicial pre-election publicity. The petitioners cited no authority for this claim, nor did they argue for the extension, modification, or reversal of existing law. Judged objectively, this second petition is legally implausible, and is also sanctionable on that basis.

Finally, we address the respondents' fourth contention: that the petitioners should be sanctioned for raising the claim in their motion for sanctions that the opposition brief was factually misleading. On this matter, our decision to sanction the respondents is conclusive. To reiterate, we find that the respondents' factual assertions were misleading. The petitioners appropriately raised the claim that the assertions were grounds for sanctions. There is no basis for sanctioning the petitioners for raising this claim.

129

## VII.

█This Court has broad discretion to fashion an appropriate sanction for violation of R.App.Proc. 38(b). Sanctions may be imposed on the attorney, on the client, or both. See Chevron, U.S.A., Inc., supra. Sanctions should be allocated among the persons responsible for the offending document, based on their relative culpability. Id. We believe that it would be inappropriate to sanction the petitioners, the respondents, or the attorney representing O'Connor in this sanctions proceeding. Instead, we find that Mitchell and O'Connor were responsible for the sanctionable conduct we have determined and should be held personally accountable.10/

Accordingly, we impose a fine on Mitchell for signing the second petition--a document that was neither well grounded in fact nor well grounded in law. We also impose a fine on O'Connor for (1) raising a claim for an improper purpose and (2) for factual misrepresentations.

Our next consideration is the amount of the fine.

This Court recently imposed a sanction sua sponte. Commonwealth v. Kawai, No. 89-11 (N.M.I. Jan. 17, 1990). The sanctioned attorney was ordered to pay a $1,000 fine, escalating by $25 each day if the fine became delinquent. Id., slip op. at 6, 7.

The circumstances of that case are quite different from those in this action. In Kawai, an appeal was brought before

_____

10/ We decline to award costs, attorneys fees or any other penalty or relief sought in the motions.

130

this Court on a normal schedule. The attorney for the appellant had thirty days to consider filing an appeal, sufficient time to discover upon cursory research that any appeal would be frivolous.

In contrast, the writ of mandamus proceeding that provided the grist for this action took place under severe time constraints caused by the proximity of the November 4 election. The petitioners' petition was filed on October 27, eight days after the Superior Court issued its order of October 19. We required the respondents to file their opposition brief within four days, a task they accomplished on October 31. Given the time constraints, we determine that a fine of $250 is appropriate for each sanctionable offense: $250 for Mitchell and $500 for O'Connor.

Fed.R.Civ.P. 11 "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look and listen.'" Lieb v. Topstone Industries, Inc., 788 F.2d 151, 157 (3d Cir. 1986). This rule has also been described as the "stop and think" rule. We apply the same rationale to R.App.Proc. 38(b). The attorneys in this case should have stopped and thought before they filed the sanctionable documents we have analyzed in this action.

We expect all attorneys who file documents in this Court to adhere to R.App.Proc. 38. If they do not, they risk imposition of an appropriate sanction.

IT IS ORDERED that petitioners' counsel, Theodore Mitchell, pay a fine of TWO HUNDRED FIFTY DOLLARS ($250.00) and

that respondents' counsel, Robert J. O'Connor, pay a fine of FIVE HUNDRED DOLLARS ($500.00). Payments shall be made to the Clerk of this Court within fifteen (15) days hereof.

Entered this _19th_ day of _MARCH_, 1990.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice